# UNITED STATES DISTRICT COURT
# DISTRICT OF ALASKA

Country Mutual Insurance Company,
    Plaintiff,
vs.
Ashley E. Leffler,
    Defendant.

3:15-cv-00027 JWS

ORDER AND OPINION

[Re: Motions at Docket 36 and 39]

## I. MOTIONS PRESENTED

Before the court are the parties' cross-motions for summary judgment filed under Rule 56 of the Federal Rules of Civil Procedure. Defendant Ashley E. Leffler ("Leffler") moves for summary judgment at docket 36. Plaintiff Country Mutual Insurance Company ("Country") opposes at docket 40 and cross-moves for summary judgment at docket 39. Leffler opposes Country's motion at docket 44 and replies in support of her motion at docket 43. Country replies in support of its motion at docket 45.

Oral argument was heard on May 18, 2016.

## II. BACKGROUND

Leffler suffered injuries as a passenger in an all-terrain vehicle ("ATV") that flipped over and crashed while driving alongside Badger Road in North Pole, Alaska. The ATV's driver, Jacob Wegner ("Wegner"), was not insured, but Leffler was covered by a policy issued by Country that included uninsured motorist ("UM") and medical payments coverage. In pertinent part, Leffler's UM coverage provides that Country will pay Leffler for injuries caused by the operator of an uninsured "*motor vehicle*."[1]

---

[1] Doc. 36-4 at 5 (emphasis added).

Similarly, Leffler's medical payments coverage will pay Leffler reasonable medical expenses related to bodily injuries she sustains while occupying "a non-owned *vehicle*."[2] Thus, Leffler's eligibility for coverage under both sections depends on whether the ATV is a "motor vehicle" or "vehicle," as those terms are used in the policy.

Country's amended complaint seeks a declaratory judgment that the ATV is not a vehicle and, therefore, Leffler is not entitled to either UM or medical expenses coverage.[3] Both parties move for summary judgment.

### III. STANDARD OF REVIEW

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[4] The materiality requirement ensures that "only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."[5] Ultimately, "summary judgment will not lie if the . . . evidence is such that a reasonable jury could return a verdict for the nonmoving party."[6] However, summary judgment is mandated under Rule 56(c) "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."[7]

The moving party has the burden of showing that there is no genuine dispute as to any material fact.[8] Where the nonmoving party will bear the burden of proof at trial

---

[2] Doc. 34-4 at 9 (emphasis added).

[3] Doc. 35 at 7 ¶¶ 19-21.

[4] Fed. R. Civ. P. 56(a).

[5] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

[6] *Id.*

[7] *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

[8] *Id.* at 323.

on a dispositive issue, the moving party need not present evidence to show that summary judgment is warranted; it need only point out the lack of any genuine dispute as to material fact.[9] Once the moving party has met this burden, the nonmoving party must set forth evidence of specific facts showing the existence of a genuine issue for trial.[10] All evidence presented by the non-movant must be believed for purposes of summary judgment and all justifiable inferences must be drawn in favor of the non-movant.[11] However, the non-moving party may not rest upon mere allegations or denials, but must show that there is sufficient evidence supporting the claimed factual dispute to require a fact-finder to resolve the parties' differing versions of the truth at trial.[12]

## IV. DISCUSSION

### A. Principles of Insurance Policy Interpretation

Interpreting insurance policy language is a matter of law for the court.[13] Because insurance policies are contracts of adhesion, the court's goal is to honor the "lay insured's reasonable expectations."[14] "In other words, '[t]he objectively reasonable expectations of applicants and intended beneficiaries regarding the terms of insurance contracts will be honored even though painstaking study of the policy provisions would have negated those expectations.'"[15]

---

[9] *Id.* at 323-25.

[10] *Anderson,* 477 U.S. at 248-49.

[11] *Id.* at 255.

[12] *Id.* at 248-49.

[13] *See State Farm Mut. Auto. Ins. Co. v. Dowdy*, 192 P.3d 994, 998 (Alaska 2008).

[14] *Id. See also C.P. ex rel. M.L. v. Allstate Ins. Co.*, 996 P.2d 1216, 1222 (Alaska 2000).

[15] *C.P. ex rel. M.L.*, 996 P.2d at 1222 (quoting *Jones v. Horace Mann Ins. Co.*, 937 P.2d 1360, 1362 n.3 (Alaska 1997)).

When determining the insured's reasonable expectations, courts look to "(1) the language of the disputed provisions in the policy, (2) other provisions in the policy, (3) extrinsic evidence, and (4) case law interpreting similar provisions."[16] "Policy language is construed in accordance with ordinary and customary usage."[17] Where the plain language of the policy limits coverage, courts must honor those limitations.[18] Such limitations are interpreted narrowly, whereas grants of coverage are interpreted broadly.[19] If there are two or more reasonable interpretations of particular policy language, the court applies the interpretation that most favors the insured.[20]

**B.    UM Coverage**

As set out above, Leffler's entitlement to UM coverage depends on whether the ATV is a "motor vehicle" under the policy.[21] The policy defines "motor vehicle" in two places, first, in the general "definitions" section and second, in the UM coverage section (Section 2) specifically. The general definition of "motor vehicle" would preclude coverage because it defines "motor vehicle" as "a land motor vehicle designed for use principally on public roads."[22] The parties agree that the ATV was not designed for use principally on public roads.[23]

---

[16]*Allstate Ins. Co. v. Teel*, 100 P.3d 2, 4 (Alaska 2004).

[17]*Allstate Ins. Co. v. Falgoust*, 160 P.3d 134, 139 (Alaska 2007).

[18]*C.P. ex rel. M.L.*, 996 P.2d at 1222.

[19]*Id.*

[20]*Falgoust*, 160 P.3d at 138.

[21]Doc. 36-4 at 5.

[22]*Id.* at 2.

[23]*See* the ATV's user manual. Doc. 40-11 at 6 ("<u>Never</u> operate this vehicle on a public road, even a dirt or gravel one, because you may not be able to avoid colliding with other vehicles.") (emphasis in original).

But the parties also agree that the UM-coverage-specific definition, not the general definition, controls. This specific definition lists various types of motor vehicles that are not "motor vehicles" for UM coverage purposes.[24] Included on this list is a motor vehicle described as "self-propelled equipment designed principally for use off public roads," but only when such equipment is not "on public roads."[25] The parties agree that, under this definition, Leffler is entitled to UM coverage if the ATV accident occurred "on a public road."[26]

The policy does not define "public road." The Alaska Supreme Court has defined this term generally as "a road that the public may freely use,"[27] but that definition is not helpful here because it only expands on the meaning of the word "public," which is not in dispute here. Instead, the parties dispute the meaning of the word "road."

Leffler argues that, based on the Alaska Supreme Court's decision in *Sowinski*,[28] "road" is ambiguous and, therefore, the court should adopt the reasonable interpretation of that term that is most in her favor. Leffler argues that the court should adopt a

---

[24]Doc. 36-4 at 6.

[25]*Id.*

[26]Doc. 40 at 2. *See also Hillman v. Nationwide Mut. Fire Ins. Co.*, 758 P.2d 1248, 1250 (Alaska 1988) ("We find that the only reasonable interpretation of the 'motor vehicle' definition is that advanced by Nationwide, i.e., that . . . motorized vehicles designed mainly for use *off* public roads, such as an ATV, are 'motor vehicles' within the policy definition when they are used *on* public roads.") (emphasis in original).

[27]*Sowinski v. Walker*, 198 P.3d 1134, 1144 (Alaska 2008).

[28]*Sowinski*, 198 P.3d at 1144 ("[W]e agree with the . . . plaintiffs that the language of the agreement is ambiguous. The State promised that the access road would be a 'public road.' . . . . The term 'public road' does not appear to have any particular meaning in Alaska law—it is not defined either in Alaska statutes or regulations. While there are numerous roads in Alaska that are accessible to the public that the State does not maintain, there are also a vast number of roads used by the public that the State does maintain. Given these contradicting facts, it would be possible based on the settlement's language—though not necessary—for the State or Carl Bingham to construe the settlement as obligating the State to maintain the access road.").

dictionary definition of "public road" that defines the term as a "way established and adopted . . . for the use of the general public . . . for all purposes of travel or transportation to which it is adopted and devoted."[29] Country disagrees that "road" is an ambiguous word, but it contradicts its own argument by supplying an alternative definition of road that differs from Leffler's definition.[30]

Leffler reads too much into *Sowinski*. There, the Alaska Supreme Court was focusing on the "public" nature of the road in question, as the parties disputed whether the state or a private property owner was responsible for maintaining an access road.[31] The court did not conclude, as Leffler suggests, that the word "road" is an ambiguous term. Regardless, even if "road" is ambiguous and, therefore, Leffler's definition of the term applies, her claim for UM benefits still fails.

The court's task is not to interpret the phrase "public roads" in the abstract, but rather to determine the objectively reasonable expectation of a lay insured regarding the meaning of that phrase in the context of the coverage exclusion in Leffler's policy. Courts that have considered similar exclusions have held that a reasonable insured would understand that the phrase "public roads" is used to distinguish between public roads, on one hand, and terrain that is suitable only for specially designed vehicles, on the other.[32] In other words, if one is using a farming tractor or an off-road vehicle in a

---

[29]Doc. 37 at 5 (quoting Black's Law Dictionary at 1492 (4th ed. 1968)).

[30]Doc. 40 at 23 (arguing that "road" and "roadway" from AS 28.90.990(24) are synonymous).

[31]*Sowinski*, 198 P.3d at 1143 ("The plaintiffs contend that the term 'public road' is ambiguous, both in legal and common usage, and thus should be construed in their favor on summary judgment to include a promise by the State to protect and maintain the access road for the benefit of the traveling public.").

[32]*See Hale v. Allied Ins.*, 465 F. App'x 757, 759 (10th Cir. 2012) ("Even though Hale's policy does not define 'public road,' it nevertheless distinguishes between public roads and terrain suitable only for specially designed vehicles. . . . . Necessarily excluded from the category of 'public roads' are many of the paths and trails for which ATVs are especially suited, by design and, in this case, use."); *Gittings v. Am. Family Ins. Co.*, 888 P.2d 1363, 1369 (Ariz.

location where one ordinarily uses such a vehicle, coverage is excluded. But, if such a vehicle is instead being used on a public road, coverage exists. Given this context, even if an ATV trail could be considered to be a "road" in some general sense, the policy excludes coverage if vehicular travel on that road is suitable only for specially designed vehicles.

According to Leffler, it is undisputed that the ATV accident occurred "between a paved parallel bike path and the paved portion of Badger Road itself."[33] Leffler supports this statement by her own affidavit[34] and Wegner's affidavit.[35] It is also confirmed by the Alaska State Troopers' collision report;[36] Alaska Department of Public Safety's incident report;[37] Leffler's deposition testimony;[38] Wegner's deposition

---

Ct. App. 1994) ("[T]he only evidence presented was that this off-road vehicle was being operated in exactly the manner for which it was designed—off the public roads, on an unpaved portion of the shoulder, in the opposite direction from the traffic of the road. We therefore conclude that there is no factual dispute that the vehicle was not being operated on a 'public road,' as that term has been defined in this opinion."); *Leski v. State Farm Mut. Auto. Ins. Co.*, 116 N.W.2d 718, 721 (Mich. 1962) (holding that such an exclusion covers the operation of an off-road tractor only where it is being used "in other than its ordinary place of usage; in other words, in a type of operation in which the tractor would be used on the road going to and from farms or when used on the road for hauling.").

[33] Doc. 36 at 2. *See also* Doc. 37 at 5.

[34] Doc. 36-1 at 1 ¶ 4 (stating that she perceived that the accident occurred "between the Badger Rd. bike path and Badger Rd. itself").

[35] Doc. 36-3 at 1 ¶ 5 (stating the same).

[36] Doc. 40-2 at 1 ("Vehicle 1 was traveling in between Badger Road and the bike path riding through the ditches, when vehicle 1 rolled over.").

[37] Doc. 40-3 at 6 ("I observed tracks from what appeared to be a side by side from Badger Road in between the paved side walk into the ditch, where the side by side appeared to have rolled over."); *id.* ("Jessica advised they were driving through the [puddles] in between the road and sidewalk when the side by side rolled over.").

[38] Doc. 40-6 at 59 ("[W]e were off of Badger Road—Badger Road and the bike path."); *id.* at

testimony;[39] and photos from the scene of the accident.[40]  Because this terrain is undoubtedly suitable only for specially designed vehicles like ATVs, Leffler is not entitled to UM coverage as a matter of law.

**C.    Medical Payments Coverage**

The medical payments coverage section of Leffler's policy differs from the UM section because it uses the phrase "non-owned vehicle" instead of "motor vehicle" and does not provide a more specific definition of that phrase.[41]  The policy's general definitions section, however, defines "non-owned vehicle" as "a land motor vehicle you or your relatives do not own and which is not available for regular use by you or a relative."[42]  Country argues that words "motor vehicle" in this definition have the same meaning that they have in the policy's general definition of "motor vehicle," and precludes coverage of ATVs.  Leffler disagrees, arguing that the phrase "land motor vehicle" is undefined by the policy[43] and proposes the following definition: "any motor vehicle that operates . . . on land."[44]

Leffler's argument lacks merit.  Even under her proposed definition of "land motor vehicle," she cannot avoid the term "motor vehicle," which the policy clearly defines as a vehicle designed for use principally on public roads.  No reasonable insured would think that a "motor vehicle" (which is defined as a "land motor vehicle") means something different than a "motor vehicle that operates on land."  Because she

---

[39]Doc. 40-7 at 60-62 (describing the four-wheeler path where he was driving as being located in a "ditch" on the side of Badger Road); *id.* at 66 ("[I]f you were to come off the pavement, the downhill part, I guess, what I would assume is what caught the tire and caused the roll."); *id.* at 69 ("Q: And you were riding on the path where four-wheelers ride?  A: Yes.").

[40]*See* Doc. 40-9 at 3-5, 9, 22-23.

[41]Doc. 34-4 at 9 (emphasis added).

[42]Doc. 36-4 at 2.

[43]Doc. 43 at 5.

[44]*Id.* at 6.

was occupying a vehicle that was designed for off-road use, Leffler is not entitled to medical payments coverage.

## V.  CONCLUSION

Based on the preceding discussion, defendant's motion at docket 36 is DENIED, and plaintiff's motion at docket 39 is GRANTED.  Judgment shall be entered in plaintiff's favor.

DATED this 19th day of May 2016.

/s/ JOHN W. SEDWICK
SENIOR UNITED STATES DISTRICT JUDGE